## THE SARMATIA.

## THE BARBARIGO.

(District Court, D. Maryland. November 14, 1918.)

COLLISION ☞125—VESSEL AT FAULT—EVIDENCE.

> Under conflicting evidence, in view of credit given witnesses, fault for collision between two of a fleet of convoyed ships, depending on which was out of its proper place, in a line, abreast, 500 yards apart, *held* solely with respondent.

In Admiralty. Libel by Peder Christian Moller Pederson, master of the steamship Sarmatia, against the steamship Barbarigo; Umberto Nobile, claimant. Decree for libelant.

George Forbes, of Baltimore, Md., for libelant.

Ritchie, Janney & Stuart, of Baltimore, Md., and Kirlin, Woolsey & Hickox, of New York City, for respondent. ·

ROSE, District Judge. Shortly after 1 o'clock on the morning of May 16th last, at a point in the Mediterranean something over 200 miles east of Gibraltar, there was a collision between the Danish steamship Sarmatia, hereinafter referred to as the "Dane," and the Italian steamship Barbarigo, spoken of as the "Italian." They formed part of a fleet of seven or eight merchant ships, under convoy of destroyers, armed trawlers, etc. The convoyed vessels were sailing in line abreast. Each ship should have been 500 yards away from its nearest neighbor, whether to the right or to the left.

The night of the collision was calm. The moon had gone down. There may have been some clouds in the sky, and it was therefore dark, but there was no mist. All the witnesses, differing as they do as to much else, agree that ships could be seen for a distance many times greater than would have been necessary to have avoided the accident.

Nothing in the testimony suggests that there was anything the matter with the steering gear or other machinery of either vessel. They came together because one or the other of them was carelessly handled. As a matter of course each of them says it kept its position, and the other came down on it. As it is not likely that more than one of them was out of its proper place to any material extent, the sole question is: Which one was where it should not have been?

The Italian says that the Dane closed down on it and drew a little ahead, so at the time they came together, the Dane was about a half length forward. The Dane's story is that the Italian had been ahead about a half ship's length, and that shortly before the collision, she began to drop back and down upon the Dane, and continued to do so until she struck. There is no question that the bluff of the port side of the Italian's bow struck or was struck by the starboard side of the Dane at a point a little abaft of the latter's main rigging. .

If the Italian's version is true, the Dane must have been moving appreciably faster than the other ship. The Dane's account is con-

sistent with the speed of the two ships being at the critical period more nearly equal. While sailing in convoy, the aim is to keep all the ships moving at a uniform rate, a purpose which, of course, is not always perfectly attained.

As the distance between the ships grew perilously narrow, the Dane gave a whistle signal. The collision followed hard thereon. Various witnesses estimate the interval somewhat differently. Some say it was one minute; some three. Such estimates, of course, have no value 'other than to show that the intervening time was of the shortest.

That the Dane whistled was not disputed, but there is a question as to how many blasts it blew. It says there were two, signifying it was turning to port, and out of the Italian's way. The witnesses from the latter swear that it gave but one; that is, that it gave notice that it was doing what they say it was, namely, turning to starboard. Whether the number was one or two had in itself nothing to do with the disaster. The signal, whatever it was, never caused the collision nor contributed to it. The conflicting stories told about it are, however, significant as bearing upon the truthfulness of the persons who have testified concerning it. Some of the witnesses, who were on one or the other of the ships in collision, were, at the time it happened, asleep, or in such parts of the ship that they did not hear the signal at all; but those who did without exception testify in support of that number of blasts favorable to the vessel upon which they were. Three individuals, who were aboard the Owego, have been examined. It was under the American flag, was a member of the convoy, and was sailing next to the Dane on the latter's port side. Two of these witnesses were produced by the Italian, and one by the Dane. The latter said he heard whistles, but he frankly says he does not remember how many. Whether his use of the plural "whistles" was intended by him to have any meaning does not appear. The mate of the Owego was on her deck at the time the ships came together, and was produced on behalf of the Italian. He says there were two blasts, and the master of the Owego, who was asleep when the signals were given, testifies that when he came on deck a few minutes afterwards the mate told him that two blasts had been sounded. I have no question that the fact was so.

Four of the officers and men of the Italian, being all who were on her deck at the time, and who have been examined, say that there was only one blast. The ships were too close together for any of these witnesses to have failed to hear both whistles, and while it would have been easy for some, it would have been difficult for all of them to have become confused in their recollection as to the number. Their uniting in saying that only one blast was blown suggests that there was a concerted effort on their part to make the court believe that the whistle signal was in accord with the story which it was for the interests of their ship to have accepted. This conclusion, moreover, merely strengthens the unpleasant impression which these particular witnesses made at the hearing. It is true some of them were struggling, and perhaps greatly struggling, with the difficulty which unlettered or slightly lettered men have in conveying their

ideas through interpreters, the latter not familiar with the peculiarities of the particular dialect of the language spoken by them, and entirely ignorant of nautical terms in any tongue. Still, after making all proper allowance on this score, it remains true that they compared unfavorably with those produced from the Dane.

The Italian examined as a witness for it, an Italian army officer who was on board as sort of supercargo. He did not come on deck until a few minutes after the collision. He locates the Italian at that time as about its proper distance from the Norwegian ship on its starboard and from the Owego to the port of the Dane. It is stipulated that the Italian naval officer in command of the merchant fleet, and who came on deck about the same time, would have given like testimony, had it been practical to examine him. It is, however, easy to be mistaken as to distances at sea, particualrly at night. It is curious, but true, that there is a very strong instinct which makes almost every man in a case of collision, be it on land or sea, a partisan, subconscious, perhaps, but no less intense, of the conveyance in which he was at the time the accident happened. In view of these considerations and of the other evidence, I cannot give controlling weight to the testimony of these gentlemen.

At the time of the collision there must have been a number of people on the deck of some of the other five or six ships in the convoy, and some of these may have seen more or less of the accident. I believe both parties have been diligent in their efforts to locate them, but they have succeeded in producing three only, all from the Owego. Of these three, as already stated, but two were on deck when the ships came together, and unfortunately they flatly contradict each other.

The mate of the Owego was then in charge of her navigation. He claims that at the moment of collision the two ships were from 800 to 1,000 yards to the starboard of his vessel. This is the approximate position in which they would have been had the collision taken place as the Italian says it did. The master of the Owego, who came on deck a moment or two later, confirms this estimate. In weighing the value of their testimony, it is probably unimportant to note that they were mistaken as to what happened after the collision. They think that the Dane dropped to the rear. It was the Italian who fell back. Their error, in a respect in which they did not claim to be positive, does not discredit their testimony. At night they could readily have been mistaken. The testimony of these witnesses was taken in New York, and I did not have the advantage of seeing or hearing them.

The third witness from their ship was an enlisted man in the United States navy. He was a member of the armed guard. He testified in open court, and struck me as being unusually intelligent and impartial. He locates the Dane at the time of the collision about 150 yards to the right of the Owego's course; the Owego then being a ship's length ahead of the Dane. This would be about the position in which the Dane would have been, had its testimony been true, namely, that the only departure it made from its proper place was in turning somewhat to port to avoid the Italian. He, moreover, agrees with the wit-

nesses from the deck of the Dane, in that, not long before the collision, the Italian seemed to be something like a half ship's length ahead of the Dane. The only portion of his testimony inconsistent with the account given by the witnesses on the Dane is that, according to him, the latter was about as close to his ship when he went on watch as it was at the time of the collision. According to the story of the Dane, before it moved down towards that ship in an effort to avoid the Italian, it was 400 or 500 yards away from the Owego.

The written testimony of the master and mate of the Owego has not favorably impressed me. They appear to be persons who would scarcely have been holding these positions, had not the demand, created by the war, for qualified officers, put many men in places which they could not otherwise have attained. They were rather singularly forgetful of things which it would have been natural for them to remember. For example, they cannot recall that there was a ship on their port side. It seems quite satisfactorily established that there was in that position a large five-masted Italian steamer.

Some comment has been made on the failure of the Dane to produce its helmsman. There is no question that, from the time the case got into the hands of its proctor in this port, all diligence to secure him was exercised. It is unfortunate that we do not have the benefit of the story he could have told.

As is usual in these cases, there are discrepancies among the stories of the witnesses for the Dane. It remains true, however, that the impression made on my mind by all the testimony is such that I am constrained to find the Italian solely to blame.